**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5519-18T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

VINCENT LAING a/k/a
VINCENT C. LAING,

    Defendant-Appellant.

_____

Submitted October 5, 2020 -Decided December 18, 2020

Before Judges Fasciale and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 11-01-0018.

Joseph E. Krakora, Public Defender, attorney for appellant (Mark Zavotsky, Designated Counsel, on the brief).

Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Monica do Outeiro, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant, Vincent Laing, appeals from an April 11, 2019 order denying his petition for post-conviction relief (PCR). Defendant argues that his trial counsel rendered ineffective assistance. Judge Dennis R. O'Brien entered the order without conducting an evidentiary hearing and rendered an oral opinion. After carefully reviewing the record in light of the applicable legal principles, we affirm.

The charges arose from a fatal motor vehicle accident. Defendant was operating his vehicle at a high speed when he crossed the center line and collided head-on with an elderly victim. The elderly victim was pronounced dead at the scene. Later that evening, defendant admitted to police he had ingested Roxicodone and Xanax. He told police the drugs had been provided to him for pain management by his physician. Blood tests taken at the hospital confirmed that these drugs were in his system at the time of the fatal crash.

A jury found defendant guilty of second-degree vehicular homicide, N.J.S.A. 2C:11-5(a), and third-degree unlawful possession/use of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10(a)(1). He was sentenced on his homicide conviction to an extended term of eleven years in prison, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. The court imposed a

2

concurrent five-year term on the CDS conviction. On direct appeal we upheld the convictions and sentence, State v. Laing, No. A-0289-14T2 (App. Div. May 17, 2017), and the Supreme Court denied certification, State v. Laing, 231 N.J. 319 (2017). Defendant thereafter filed a pro se petition for PCR. On April 11, 2019, the PCR judge entered the order under review.

On appeal, defendant argues:

POINT I

DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHEN COUNSEL TOLD HIM TO LIE ON THE WITNESS STAND REGARDING THE SOURCE OF THE XANAX, WHEN COUNSEL LIED ABOUT THE AVAILABILITY OF AN EXPERT WITNESS, AND WHEN COUNSEL PREVENTED HIM FROM PRESENTING A DEFENSE AT TRIAL.

    a. APPLICABLE LAW

    b. COUNSEL WAS INEFFECTIVE FOR TELLING THE DEFENDANT TO LIE ON THE WITNESS STAND THEREBY PREVENTING HIM FROM PRESENTING A VALID DEFENSE.

We disagree and affirm primarily for the reasons given by Judge O'Brien. We add the following remarks.

Both the Sixth Amendment of the United States Constitution and Article 1, paragraph 10 of the State Constitution guarantee the right to effective assistance of counsel at all stages of criminal proceedings. Strickland, 466 U.S. 668, 686 (1984) (citing McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)).

In order to demonstrate ineffectiveness of counsel, "[f]irst, the defendant must show that counsel's performance was deficient. . . . [s]econd, the defendant must show that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687. In State v. Fritz, our Supreme Court adopted the two-part test articulated in Strickland. 105 N.J. 42, 58 (1987).

To meet the first prong of the Strickland test, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." 466 U.S. at 687. Reviewing courts indulge in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. The fact that a trial strategy fails to obtain for a defendant the optimal outcome is insufficient to show that counsel was ineffective. State v. DiFrisco, 174 N.J. 195, 220 (2002) (citing State v. Bey, 161 N.J. 233, 251 (1999)).

The second prong of the Strickland test requires the defendant to show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. Put differently, counsel's errors must create a "reasonable probability" that the outcome of the proceedings would have been different if counsel had not made the errors. Id. at 694.

A-5519-18T1

Short of obtaining immediate relief, a defendant may prove that an evidentiary hearing is warranted to develop the factual record in connection with an ineffective assistance claim. State v. Preciose, 129 N.J. 451, 462–63 (1992). A defendant is entitled to an evidentiary hearing when (1) he is able to prove a prima facie case of ineffective assistance of counsel, (2) there are material issues of disputed fact that must be resolved with evidence outside of the record, and (3) the hearing is necessary to resolve the claims for relief. Id. at 462; R. 3:22-10(b). To meet the burden of proving a prima facie case, a defendant must show a reasonable likelihood of success under the Strickland test. Id. at 463.

Defendant contends his trial counsel rendered ineffective assistance by urging him to lie about his physician's role with respect to the Xanax. Defendant claims trial counsel wanted to use defendant's physician as a scapegoat because the physician purportedly was under indictment.[1] At trial, defendant testified that the doctor gave him the Xanax in an unmarked pill bottle. Defendant now argues that his trial testimony was not true. Moreover, defendant asserts that

---

[1] Defendant's brief notes that: "[i]t was counsel's plan to use [defendant's physician] as a scapegoat to defendant's possession of the medication because the doctor, who was currently under indictment, would have compromised credibility."

5

counsel advised him to commit perjury, which precluded him from testifying that he had not ingested Xanax before driving.

The problem with defendant's argument is two-fold: first, he has presented no evidence, aside from his self-serving certification, that his counsel suborned perjury. Second, these post-trial accusations fly in the face of the admissions defendant made to police on the night of the fatal collision, which we note are otherwise consistent with defendant's trial testimony.

The PCR court thus properly rejected defendant's contention, explaining

> [i]n regard to the allegation that trial counsel told him to lie about the method by which he obtained the Xanax, petitioner has merely put forth – put forth his own evidence to support the contention. He has not provided the Court with an affidavit from [the doctor] or trial counsel to support the contention. Furthermore, even if the Court were to find the performance was deficient on this issue, he's not established that that performance prejudiced the defense. . . . The Court finds the State's narrative more persuasive. The petitioner lied about how he obtained the Xanax because he was well aware he did not have a valid prescription for it.

The PCR judge added,

> it wouldn't have made a difference because he [trial counsel] was stuck with what he [defendant] had already given the police. That is all he had to work with, all that counsel had to work with. There's no way to get around that. And the Court finds that that does not make a difference in the ultimate result here.

A-5519-18T1

We agree with the PCR court's rationale and conclusion. Defendant told police he had taken Xanax and that his physician was the source of the medication long before counsel was assigned to the case.

Defendant next accuses his trial counsel of lying to the trial court by claiming the toxicology expert she initially planned to use was not available. Defendant posits that counsel used another toxicologist instead because she had a preexisting professional relationship with him. This claim lacks sufficient merit to warrant extensive discussion. R. 2:11-3(e)(2). The PCR court concluded that defendant's allegation that counsel lied to the trial court was little more than a bald assertion. The PCR judge determined that the initial expert was replaced because he was difficult to contact. As such, trial counsel's decision to replace him with another expert was a legitimate decision regarding trial strategy. The fact counsel already had a professional relationship with the replacement expert is hardly grounds for relief. We decline to second guess trial counsel's strategic decision with respect to the selection of an expert witness, recognizing that "a defense attorney's decision concerning which witnesses to call to the stand is 'an art,'" and "review of such decision[s] should be 'highly deferential.'" State v. Arthur, 184 N.J. 307, 321 (2005) (quoting Strickland, 466 U.S. at 693, 689).

A-5519-18T1

Even were we to accept for purposes of argument that counsel misrepresented to the trial court why she was replacing the initial expert, defendant has failed to show how he was prejudiced. The PCR court noted that the expert who ultimately testified on defendant's behalf was "more qualified," and "more universally respected by both [the] State and defense." The PCR judge added that the replacement expert had testified in twenty-seven published cases in New Jersey and fifty-seven unpublished cases, whereas the initial expert had appeared in only three published cases and fourteen unpublished cases. Resting on these findings of fact, the PCR court concluded that the qualifications of the expert who ultimately testified at trial exceeded those of the toxicologist he replaced.

Finally, defendant argues that his counsel prevented him from presenting a valid defense by suborning perjury with respect to the source of the Xanax and by lying to the trial court with respect to the unavailability of the toxicology expert. Defendant contends the PCR court "compartmentaliz[ed] defense counsel's action," and thereby "failed to consider defendant's argument in total assessing the threshold for compelling an evidentiary hearing." We view these vague contentions as a form of cumulative error argument and disagree. We acknowledge that "courts should view the facts in the light most favorable to a

defendant to determine whether a defendant has established a prima facie claim." Preciose, 129 N.J. at 462–63. However, that principle does not support defendant's suggestion that in making an evidentiary hearing threshold evaluation, we should construe these two implausible arguments together as a synergistic whole that is somehow greater than the sum of its parts.

We agree with the PCR court that counsel did not prevent defendant from presenting a viable defense at trial. In applying the first prong of Strickland analysis, we defer to counsel's strategic decisions. State v. Petrozelli, 351 N.J. 14, 21–22 (App. Div. 2002). In this instance, the strategy options available to defendant's trial counsel were wholly constrained by the incriminating admissions defendant made to police long before she began representing defendant. Defendant has failed to establish, moreover, the verdict would probably have been different had he testified that he lied to the police about ingesting CDS before driving. In sum, none of defendant's contentions, whether viewed individually or collectively, establish a prima facie case of ineffective assistance to warrant an evidentiary hearing much less a new trial.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5519-18T1